UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| WARREN C. HESTER, II,<br><br>              Plaintiff,<br><br>      v.<br><br>CHARLES DICKERSON,<br><br>              Defendant. | )<br>)<br>)<br>)<br>)<br>)  Civil Action No. 07-1785 (RCL)<br>)<br>)  **FILED**<br>)<br>)  **SEP 1 5 2008**<br>)<br>)  Clerk, U.S. District and<br>      Bankruptcy Courts |

## MEMORANDUM OPINION

This matter is before the Court on defendant's motion to dismiss. For the reasons discussed below, the Court will grant the motion.

## I. BACKGROUND

Defendant Charles Dickerson is the Branch Chief of the Juvenile and Neglect Branch, Family Court Operations Division, of the Superior Court of the District of Columbia ("Superior Court"). *See* Memorandum of Points and Authorities in Support of Defendant Charles Dickerson's Motion to Dismiss ("Def.'s Mot.") at 3.[1] Plaintiff alleges that Mr. Dickerson "released [his] District of Columbia Juvenile Court record to Kristen L. Keller, a West Virginia state official[,] on December 2, 2005, who in turned [sic] opened [his] Juvenile Court record to the public for exposure," Complaint ("Compl.") at 5 (page number designated by the Court),

---

[1] According to its website (www.dccourts.gov/superior/index.jsp), the Family Court Operations Division of the Superior Court is divided into six branches, one of which is the Juvenile and Neglect Branch. The Juvenile and Neglect Branch processes cases involving juvenile delinquency, child abuse and neglect.

1

without first obtaining authorization from the Family Division's presiding judge. *Id.* at 6. The release of his juvenile court records, plaintiff alleges, "violated [his] protected United States constitutional rights." *Id.* He demands injunctive relief whereby Mr. Dickerson in his official capacity and the Superior Court "recover [his] juvenile record from the State of West Virginia, seal it from the State of West Virginia and the public, so it will no longer be open to the State of West [Virginia] []or the public for view and exposure." *Id.* at 5. In addition, plaintiff demands damages of $2.5 million from Mr. Dickerson in his individual capacity "for the pain and suffering resulting from the violations of [plaintiff's] United States constitutional rights." *Id.*

## II. DISCUSSION

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, defendant moves to dismiss on the ground that the complaint fails to state claims on which relief can be granted. *See* Def.'s Mot. at 8. Mr. Dickerson argues that plaintiff's claims against him "are barred by the well-settled doctrine of judicial immunity." *Id.* In his view, he "would not have violated any law of the District of Columbia or any rights of plaintiff by releasing plaintiff's juvenile case records to a prosecuting attorney" because his actions were in compliance with D.C. Code § 16-2331(b). *Id.* at 11.

### A. Motion to Dismiss Under Rule 12(b)(6)

The Federal Rules of Civil Procedure require that a complaint contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. ___, 127 S.Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A motion under Rule 12(b)(6) does not test a plaintiff's likelihood of

success on the merits; rather, it tests whether a plaintiff properly has stated a claim. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). The factual allegations of the complaint are presumed to be true and are construed liberally in plaintiff's favor. *See, e.g., United States v. Phillip Morris, Inc.*, 116 F. Supp. 2d 131, 135 (D.D.C. 2001). Although "detailed factual allegations" are not required to withstand a Rule 12(b)(6) motion, a plaintiff must offer "more than labels and conclusions" or "formulaic recitation of the elements of a cause of action" to provide "grounds" of "entitle[ment] to relief." *Bell Atl. Corp. v. Twombly*, 127 S.Ct. at 1964-65. Thus, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 1965 (citations omitted).

### B. Judicial Immunity

In general, judges are immune from suit for money damages. *Mireles v. Waco*, 502 U.S. 9 (1991); *Cleavinger v. Saxner*, 474 U.S. 193 (1985); *Butz v. Economou*, 438 U.S. 478 (1978); *Pierson v. Ray*, 386 U.S. 547 (1967); *see Moore v. Motz*, 437 F. Supp. 2d 88, 91 (D.D.C. 2006). Absolute judicial immunity provides not only immunity from suit but also from the ultimate imposition of damages, even if a judge acts in bad faith or with malice. *See Mireles v. Waco*, 502 U.S. at 11. "The common law immunity of judges is fully applicable in suits under 42 U.S.C. § 1983 alleging deprivations of constitutional rights." *Clark v. Taylor*, 627 F.2d 284, 287 (D.C. Cir. 1980) (per curiam) (citing *Pierson v. Ray*, 386 U.S. at 553-55).

"Case law has recognized that the protection of judicial immunity is not confined only to judges but may extend to other officers of government whose duties are related to the judicial process." *Nwachukwu v. Rooney*, 362 F. Supp. 2d 183, 192 (D.D.C. 2005) (citations omitted)

(concluding that Bar Counsel, who is authorized to investigate attorney misconduct subject to disciplinary jurisdiction of the District of Columbia Court of Appeals, and its employees are protected by judicial immunity). In this Circuit, absolute judicial immunity extends to clerks of the court. *Sindram v. Suda*, 986 F.2d 1459, 1460-61 (D.C. Cir. 1993) (per curiam). Therefore, "clerks, like judges, are immune from damage suits for performance of tasks that are an integral part of the judicial process." *Id.*; *see Hurt v. Clerks, Superior Court of District of Columbia*, No. 06-5308, 2006 WL 3835759, at *1 (D.C. Cir. Dec. 22, 2006) (per curiam) (affirming dismissal of action against judicial clerks to whom absolute judicial immunity is extended); *McAllister v. District of Columbia*, 653 A.2d 849, 851 (D.C. 1995) (holding that "court clerks, like judges, should be immune from damage suits for performing tasks that are integrally related to the judicial process."). "[I]mmunity applies to all acts of auxiliary court personnel that are 'basic and integral part[s] of the judicial function,' unless those acts are done 'in the clear absence of all jurisdiction.'" *Sindram v. Suda*, 986 F.2d at 1461 (quoting *Mullis v. United States Bankruptcy Court for the Dist. of Nevada*, 828 F.2d 1385, 1390 (9th Cir. 1987)).

Plaintiff argues that Mr. Dickerson "is <u>not</u> a clerk of court for the Superior Court of the District of Columbia Family Division nor any other Court in the District of Columbia." Pl.'s Opp'n at 7 (emphasis in original). His "official title is branch chief of juvenile/neglect, a title that asserts he is a leader for that particular section of the District of Columbia City Government." *Id.* at 8. As such, plaintiff asserts that Mr. Dickerson's position "<u>doesn't</u> directly pertain to the courtroom, [and that] he is not a judge, prosecutor, clerk of court, bailiff, witness for the state nor [sic] defense, court reporter nor [sic] juror member." *Id.* (emphasis in original).

Plaintiff apparently is under the impression that only those persons with responsibilities in the courtroom itself are protected by judicial immunity. This is not the case. In *Sindram v. Suda*, for example, plaintiff complained of the court clerks' "[a]ssistance in preparing and dissemination of the opinion of one of the defendant judges; their directing plaintiff's causes of action to the defendant judges; and their institut[ing] an erroneous order against Plaintiff barring his access to the court," and these acts "are indisputably integral parts of the judicial process and are within their jurisdiction," *id.*, 986 F.2d at 1461 (internal quotation marks omitted), even though they were not performed by courtroom personnel. Judicial immunity extends both to persons who perform quasi-judicial functions and to persons who act at the behest of the courts. *See, e.g., Turner v. Barry*, 856 F.2d 1539, 1541 (D.C. Cir. 1988) (holding that "District of Columbia probation officers are absolutely immune from liability for damages in an action brought pursuant to 42 U.S.C. § 1983 for alleged errors in the investigation and preparation of presentence reports" which are "integral part[s] of the judicial function of sentencing"); *Simons v. Bellinger*, 643 F.2d 774, 782 (D.C. Cir. 1980) (extending absolute judicial immunity to committee members appointed by District of Columbia Court of Appeals to monitor unauthorized practice of law); *Ficken v. Golden*, No. 04-0350 (RMU), 2005 WL 692019, at *6 (D.D.C. Mar. 24, 2005) (concluding that court-appointed guardian "functioned as an agent of the Superior Court and therefore is immune from suit"); *Cunningham v. District of Columbia*, 584 A.2d 573, 576 (D.C. 1990) (extending absolute judicial immunity to psychiatrist who evaluated and treated parolee at the behest of the Parole Board).

Nor is it true that Mr. Dickerson's position as the Branch Chief of the Juvenile and Neglect Branch of the Superior Court's Family Court Operations Division is "equivalent to the

branch chief of the District of Columbia Waste Management." Pl.'s Opp'n at 8. "Absolute immunity flows not from rank or title or 'location within the Government,' but from the nature of the responsibilities of the individual official." *Cleavinger v. Saxner*, 474 U.S. at 201 (quoting *Butz v. Economou*, 438 U.S. at 511). Mr. Dickerson's duties necessarily are related to the judicial process, that is, to the functioning of the Juvenile and Neglect Branch of the Family Court Operations Division. Accordingly, he is a Superior Court employee to whom absolute judicial immunity applies.

The District of Columbi Code permits the disclosure of juvenile case records "to any . . . prosecuting attorney . . . when necessary for the discharge of [his or her] official duties." D.C. Code § 16-2331(b)(6).[2] Plaintiff concedes that Kristen Keller, "[t]he prosecutor from West Virginia[,]" is the person to whom "Defendant illegally transmitted the Plaintiff's said [juvenile] record."[3] Pl.'s Opp'n at 13. Only as Branch Chief of the Juvenile and Neglect Branch, Family

---

[2] Under D.C. Code § 16-2331(b), "[j]uvenile case records shall be kept confidential and shall not be open to inspection; but, subject to [certain limitations not relevant to this case], the inspection of those records shall be permitted to . . . the United States Attorney for the District of Columbia, his assistants, and <u>any other prosecuting attorneys</u>, or defense attorneys, when necessary for the discharge of their official duties." D.C. Code § 16-2331(b)(6) (emphasis added). Juvenile case records include:

(1) Notices filed with the court by an arresting officer pursuant to this subchapter.
(2) The docket of the court and entries therein.
(3) Complaints, petitions, and other legal papers filed in the case.
(4) Transcripts of proceedings before the court.
(5) Findings, verdicts, judgments, orders, and decrees.
(6) Other writings filed in proceedings before the court, other than social records.

D.C. Code § 16.2331(a).

[3] As defendant represents, *see* Def.'s Mot. at 1-2, the State of West Virginia brought criminal charges against plaintiff. According to the West Virginia Division of
(continued...)

6

Court Operations Division, did Mr. Dickerson undertake the action of which plaintiff complains: disclosure of his juvenile case records to a West Virginia prosecutor.

The Court concludes that Mr. Dickerson is protected by absolute judicial immunity. "This immunity applies 'however erroneous the act may have been, and however injurious in its consequences it may have proved to the plaintiff.'" *Cunningham v. District of Columbia*, 584 A.2d at 576 (quoting *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 347 (1871)). Accordingly, the Court grants Mr. Dickerson's motion to dismiss.[4]

---

[3](...continued)
Corrections' website (http://www.wvdoc.com/wvdoc/OffenderSearch/tabid/117/Default.aspx), plaintiff currently is incarcerated at the Mount Olive Correctional Center in Mount Olive, West Virginia upon his conviction of and July 20, 2006 sentencing for burglary, kidnapping, and first degree sexual assault.

[4] Mr. Dickerson also moves to dismiss the complaint as against him in his individual capacity for improper service of process. *See* Def.'s Mot. at 6-7. "Pro se litigants are allowed more latitude than litigants represented by counsel to correct defects in service of process and pleadings." *Moore v. Agency for Intern. Development*, 994 F.2d 874, 876 (D.C. Cir. 1993). If there had been a defect in service of process on Mr. Dickerson, the defect could be cured. Given plaintiff's *pro se* status, the Court will deny the motion to dismiss on this ground. *See, e.g., Carvajal v. Drug Enforcement Agency*, 246 F.R.D. 374, 376 (D.D.C. 2007) (denying motion to dismiss for improper service on the Attorney General where plaintiff submitted signed return receipt sent to address to which Department of Justice indicates that correspondence to Attorney General should be mailed); *Hilska v. Jones*, 217 F.R.D. 16, 22 (D.D.C. 2003) (denying defendant's motion to dismiss and granting pro se plaintiff additional time to perfect service).

In addition, Mr. Dickerson argues that any claims against him in his official capacity are, in effect, claims against the District of Columbia itself. *See* Def.'s Mot. at 7. The Court concurs. *See, e.g., Atchinson v. District of Columbia*, 73 F.3d 418, 424 (D.C. Cir. 1996) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). These claims necessarily fail, however, because the District of Columbia cannot be held liable vicariously for alleged constitutional violations committed by its employees. *See Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 694 (1978).

An Order consistent with this Memorandum Opinion is issued separately.

/s/ Royce C. Lamberth
ROYCE C. LAMBERTH
United States District Judge

DATE: 9/15/08

---

[4](...continued)
*of Soc. Servs. of the City of New York*, 436 U.S. 658, 694 (1978).